UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, INDIVIDUALLY AND AS MOTHER ) <br> and NEXT FRIEND OF STEWART DOE, ) <br> a Minor, ) <br>     Plaintiffs, ) <br> V. ) <br> TOWN OF ACTON, MASSACHUSETTS, ) <br> ACTON-BOXBOROUGH REGIONAL SCHOOL ) <br> DISTRICT, and SCOTT HOWE, ) <br> TYLER RUSSELL, CAROLYN IMPERATO, ) <br> CHELSEA MEDVEDEFF, and ) <br> JULIANNE SCHNEIDER, Individually, and ) <br> BUREAU OF SPECIAL EDUCATION APPEALS ) <br> of the COMMONWEALTH OF ) <br> MASSACHUSETTS DIVISION OF ) <br> ADMINISTRATIVE LAW APPEALS ) <br>     Defendants. ) | CIVIL ACTION <br> NO. _____ |

## COMPLAINT AND REQUEST FOR JURY TRIAL

## INTRODUCTION

1.      This action for damages and attorneys' fees is brought pursuant to 42 U.S.C. §§

1983, 1985 and 1988 against two Town of Acton, Massachusetts, police officers, and various

school personnel who, under color of law, deprived Plaintiff Jane Doe (a pseudonym) and her

minor son Stewart (a pseudonym) of their respective rights, privileges and immunities secured by

the Constitution and law of the United States at the Merriam Elementary School, (hereinafter,

"Merriam"), located in Acton, Massachusetts, by means of (i) using excessive force against them

in violation of the Fourth Amendment to the United States Constitution and Article XIV of the

Massachusetts Declaration of Rights, (ii) preventing Jane Doe from exercising her right to care,

custody and control of her then 8 year old minor son in violation of her procedural and due

process rights under the Fifth and Fourteenth Amendments to the United States Constitution and

Article XII of the Massachusetts Declaration of Rights, and (iii) falsely and wrongfully arresting

her without probable cause. This complaint also asserts claims against the Town of Acton (hereinafter, "Town of Acton") and the Acton-Boxborough Regional School District (hereinafter, "ABRSD"). This complaint seeks damages to compensate Plaintiffs for mental anguish and other damages caused by the Defendants' wrongful actions in depriving Plaintiff of their civil rights while acting under color of law. Plaintiffs also seek punitive damages, interests, costs and attorneys' fees, as well as injunctive relief enjoining Town of Acton from maintaining a public statement, police reports and the investigative reports on the internet and available to the public. This action also brings a *de novo* appeal and complaint for judicial review by Jane Doe and her minor son Stewart from the August 18, 2021 final decision of a Bureau of Special Education Appeals (the "BSEA") Hearing Officer in an administrative proceeding challenging the provision of special education services, supports, and procedures pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1440 *et seq*., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and the state special education law, M.G.L. c. 71B, pursuant to 20 U.S.C. § 1415(i)(2). This appeal and complaint for judicial review of the BSEA decision is brought seeking a reversal of the Hearing Officer's decision and other relief.

## JURISDICTION

2.      Counts I through VI, and XXIII through XXV of this Complaint set forth civil actions brought to redress deprivations, under color of state law, of rights secured by the Constitution of the United States and by an Act of Congress pursuant to 42 U.S.C. §§ 1983 and 1985. This Court has jurisdiction pursuant to 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.

3.      Counts VII through XXII, and XXVI, of this Complaint aver causes of action which are related to the causes of action set forth in Counts I through II and arise out of the subject matter of those counts.  This court has jurisdiction over these Counts by virtue of the doctrine of pendent jurisdiction and 28 U.S.C. §1367(a).

4.      Count XXVII avers a cause of action which constitutes an appeal of findings of the hearing officer of the BSEA.  This court has jurisdiction over that Count pursuant to 20 U.S.C. §1415(i)(2)(A and B), 20 U.S.C. §1415(i)(3), and 28 U.S.C. §1331.

5.      Venue is appropriate in this District pursuant to 28 U.S.C. §1391.

### PARTIES

6.      Plaintiff Jane Doe (a pseudonym) is of legal age and sound mind, and she is a citizen of the United States who resides in Acton, Massachusetts. Jane Doe is a Black African-American who grew up in Kenya, and who moved to the United States many years ago.  Jane Doe brings this action individually and on behalf of her minor child, Stewart Doe[1] ("Stewart," a pseudonym), a male, Black African-American, who was born in the United States and who resides with Jane Doe and two siblings.  At most relevant times, Stewart attended ("Merriam"), a public school located in Acton, Massachusetts. He also attended the Conant Elementary School (hereinafter, "Conant"), a public school also in Acton.

7.      Defendant Town of Acton, Massachusetts is a municipality organized under the laws of the Commonwealth of Massachusetts, with a principal place of business located at 472 Main Street, Acton, Massachusetts.

8.      Defendant ABRSD is a public school district organized under the laws of the Commonwealth of Massachusetts with a principal place of business located at 15 Charter Road,

---

[1]  The child was referred to as "Stewart," a pseudonym, in the Bureau of Special Education Appeals proceedings.

Acton, Massachusetts. ABRSD is a recipient of federal funding. Merriam and Conant are public schools within the ABRSD.

9.       Defendant Scott Howe (hereinafter, "Howe") is an individual who, at all times relevant, was employed as a police officer with the rank of Sergeant in the Town of Acton Police Department. Howe resides at an address presently unknown to the Plaintiffs. His actions alleged in this complaint were taken under the color of laws of the Commonwealth of Massachusetts and the Town of Acton, Massachusetts. He is sued in his individual capacity.

10.      Defendant Tyler Russell (hereinafter, "SRO Russell") is an individual who, at all times relevant, was employed as a police officer in the Town of Acton Police Department. At all relevant times, SRO Russell acted as the school resource officer (hereinafter, "SRO") to the Merriam. SRO Russell resides at an address presently unknown to the Plaintiffs. His actions alleged in this complaint were taken under the color of laws of the Commonwealth of Massachusetts and the Town of Acton, Massachusetts.  He is sued in his individual capacity.

11.      Defendant Juliana Schneider (hereinafter, "Schneider") is an individual who resides at a location presently unknown to Plaintiffs. At all times relevant, she was the Principal of Merriam. At all times relevant, Schneider was an officer, agent, servant or employee of ABRSD. She is sued in her individual capacity.

12.      Defendant Carolyn Imperato (hereinafter, "Imperato") is an individual who resides at a location presently unknown to Plaintiffs. At all times relevant, she was the school psychologist at Merriam. She is sued in her individual capacity.

13.      Defendant Chelsea Medvedeff (hereinafter, "Medvedeff") is an individual who resides at a location presently unknown to Plaintiffs. At all times relevant, she was a special education teacher at Merriam. She is sued in her individual capacity.

4

## FACTS

14.    At all relevant times, ABRSD has operated various public schools, including, without limitation, Merriam, pursuant to an Agreement for a Regional School District for the Towns of Acton and Boxborough, as amended.

15.    Pursuant to a Memorandum of Understanding (hereinafter "MOU"), between the Town of Acton Police Department and ABRSD, at all relevant times, the Town of Acton was to provide to the Merriam a trained SRO, whose duties are set forth in the MOU.

16.    Pursuant to the MOU, the SRO was subject to the supervision and control of the Town of Acton, and reported directly to a Sergeant or Lieutenant of the Town of Acton.

17.    At all relevant times, SRO Russell served as the SRO at Merriam.

18.    Stewart constitutes an individual with a disability within the ambit of Section 504, the IDEA, 20 U.S.C. § 1400 et seq., M.G.L. c 71B, and the Americans With Disabilities Act ("ADA"). Stewart suffers from a developmental and socio-emotional disability, as documented in his individualized education plan (hereinafter, "IEP") at school during the relevant time period. Stewart's disabilities affect his performance in all academic areas, as well as his behavior and create additional social/emotional needs. His persistent challenges and anxiety contribute to increased adaptive, social, emotional, and learning disabilities.

19.    Stewart's disability affects his ability to learn, which is a major life activity. According to his IEP, Stewart's developmental delay and socio-emotional disability impacts his ability to access support and engage in problem-solving strategies with peers and adults and impacts his ability to follow the expected behavioral routines of the classroom. Stewart is an otherwise qualified individual with one or more disabilities who meets the essential requirements to receive services from or participate in the programs or activities of the ABRSD.

5

20.     From approximately August, 2019 through January, 2021, Stewart attended Merriam, where only 13 out of 409 students were Black.

21.     At all times relevant, the Town of Acton and ABRSD, through its/their respective officers, agents, servants or employees, including, without limitation, Schneider, Howe and SRO Russell, treated Jane Doe and Stewart differently because of their race, color, national origin and ethnicity.

22.     On the morning of on or about Thursday, January 9, 2020, Stewart, then in the second grade, woke up early, excited to take the bus to school and to see Assistant Principal Bryant Amitrano (hereinafter, "Amitrano"), a person whom Stewart liked. Thursday, January 9, 2020, was an early dismissal (12:50 p.m.) day at school.

23.     On that morning, Jane Doe wrote an email to Amitrano stating that Stewart was in a "great mood and excited to come to school on time."

24.     In response, Schneider wrote to Jane Doe that Amitrano was out that day.

25.     On that day, Stewart became dysregulated at Merriam, and the school crisis intervention team ("CIT") was called.  Members of the CIT, including, without limitation, Medvedeff, who led the safety team, and Schneider and Imperato, with no pedagogical justification, used excessive and unreasonable force to physically restrain Stewart without probable cause or other justification therefor on one or two occasions in Amitrano's office using a two person stability hold and a Safety Care chair hold for a significant amount of time.  During the improper, dangerous, and excessive restraint, Stewart began to hyperventilate, cry, and his eyes rolled back into his head. Medvedeff conceded the hold was uncomfortable for Stewart. Medvedeff reported that the child's breathing and eye reaction was "startling." Only at this point did the Defendants Medvedeff, Schneider and Imperato release him slowly.

6

26.     At or around that time, Medvedeff sought the assistance of SRO Russell to assist

with Stewart, even though SRO Russell was not trained in restraining children, Stewart had not

committed any crime and, further, was too young to be charged with any crime under Mass. Gen.

Laws c. 119 §52. SRO Russell wrote in his police report that he was asked to provide assistance

for an "uncooperative child"--the exact type of conduct the MOU assigned to the school, not to

the police, to address. SRO Russell admitted he had no special training or even information on

Stewart or his disabilities, his triggers, his IEP, or his behavioral plan before SRO Russell put his

hands on Stewart. By the time SRO Russell was asked to help restrain 8 year old Stewart, there

were already six adults restraining the child. SRO Russell stated he was immediately asked to

assist with restraining, though he also reported he had never done it before.

27.     Schneider had involved SRO Russell in other incidents involving Stewart, which

incidents occurred on January 7, 2020 and on January 8, 2020, even though, in those two

incidents, Stewart had not committed any crime. SRO Russell acknowledged that, also on

January 9, 2020, Stewart had not committed a criminal offense.

28.     Even though SRO Russell was not a member of the CIT and was not trained in the

safe restraint technique, he participated, as a uniformed officer, in restraining Stewart without

any probable cause or other justification therefor, thereby wrongfully injecting law enforcement

into a civil matter and using excessive and unreasonable force. According to SRO Russell, the

hold lasted for approximately twenty minutes.

29.     At the BSEA due process hearing, Amitrano testified that Medvedeff provided the

information regarding the restraint begin time and restraint end time for the required Log of

Student/Staff Restraint Injury Reports on the PowerSchool System, (hereinafter "Log") a

document that is sent to District administrators and filed with DESE. That Log documents that

7

Stewart was restrained for 15 minutes. Medvedeff testified that the same hold was "like probably two minutes, tops," but her memory appeared to be less than solid, as shown by her testimony that Stewart was restrained an additional time on January 8, 2020, instead of being restrained twice on January 9, 2020. Medvedeff also could not specify whether the restraint on January 8, 2020 lasted more or less than 10 minutes, or more or less than 5 minutes. Only with the assistance of her own counsel on cross examination did she correct the memory failure that, indeed, both restraints had occurred on January 9, 2020.

30.     The Log was required to be filed within three days of the restraint; however, Amitrano testified that the Log he created for ABRSD was not filed until almost a month after the restraint. Even then, Amitrano was uncertain whether that Log had been filed officially with DESE. The Log failed both to note that an untrained police officer participated in the restraint and to state Stewart's startling reaction to the dangerous and improper restraint: hyperventilation, crying, and his eyes rolling back in his head.

31.     Schneider called SRO Russell prior to calling both Stewart's mother, and the Advocates Mobile Crisis unit (hereinafter, "mobile crisis") at Emerson Hospital. Mobile crisis is a response team that is available to respond to a school or home when called by a school or parent to evaluate a child and support his mental health during a mental health emergency.

32.     At some point shortly before classes were dismissed for the day at Merriam, Schneider contacted Jane Doe because of Stewart's dysregulation and asked her to go to the school.

33.     At or around that time, without consulting Jane Doe, Schneider, SRO Russell and Imperato made the decision to transport Stewart to the hospital pursuant to Mass. Gen. Laws c. 123 §12. Schneider testified that the SRO, not ABRSD, made that decision; however, SRO

8

Russell testified that ABRSD made that decision and he just "sectioned" Stewart as a courtesy to the school.

34.     At no point was Jane Doe asked to, or permitted to, participate in the decision as to whether her son Stewart would be hospitalized under Mass. Gen. Laws c. 123 §12, despite that decision being made only after school had been dismissed.

35.     At no point on January 9, 2020, did Stewart meet the criteria to be hospitalized under Mass. Gen. Laws c. 123 §12 or under any other statute, as Stewart was calm in his mother Jane Doe's presence and was then not a danger of imminent harm to himself or others. A text message from one school personnel to another demonstrates that the school had previously planned one day earlier to send Stewart to the hospital for a mental health evaluation. No one from ABRSD told Jane Doe about its plan.

36.     Jane Doe arrived at the school at approximately 12:50 p.m., as students were being dismissed from the school.

37.     As of 12:50 p.m., ABRSD and/or the Town of Acton no longer had any control over Stewart, and, as of 12:50 p.m., Jane Doe was to have sole control and supervision over Stewart.

38.     At no time while Stewart remained at Merriam's property on January 9, 2020 - even after the end of the school day at 12:50 p.m., did any of the Defendants relinquish control of Stewart to Jane Doe.

39.     At that time, Jane Doe met with SRO Russell, Schneider and Imperato, and was told that Stewart needed to go to the hospital pursuant to Mass. Gen. Laws c. 123 §12.

40.     Jane Doe disagreed with their assessment, and  asked to take Stewart to the hospital herself, but SRO Russell, Schneider and Imperato refused. The Defendants separated

9

Jane Doe from Stewart and would not allow her to see her son or take him with her from Merriam.

41.     Contemporaneous video from the school shows that Stewart did not meet the standard for involuntary hospitalization under Mass. Gen. Laws c. 123 §12.

42.     At or around this time, Stewart wrote a note asking whether school officials had told Jane Doe that he was there. Merriam's CIT report notes that Stewart was told yes, but was not told that his mother was at Merriam because it was unclear what his reaction would be to that fact  as his mother was outside of Amitrano's office, where Stewart was and appeared unhappy.

43.     Jane Doe demanded that Merriam (and the Acton Police which Merriam summoned) release her child to her. Eventually, Jane Doe was permitted to see Stewart, and to take a walk with him, under the supervision of SRO Russell, for approximately five minutes, before SRO Russell ushered them back to the office area.

44.     By remaining in the physical presence of Jane Doe and Stewart while they walked, SRO Russell sought, by means of threats, intimidation or coercion, to prevent Jane Doe from leaving Merriam with Stewart, prohibiting the exercise of her right as his mother after the school day had ended to take her child from Merriam's presence.

45.     At or around that point, Imperato and Schneider against Jane Doe's wishes separated Jane Doe from Stewart. Once Jane Doe and Stewart were separated, Stewart frighteningly called out for his mother. Schneider heard Stewart cry out for his mother and she heard Jane Doe asking to go into the office where Stewart was being kept. Schneider acknowledged she heard Jane Doe ask to see her son between one to five times but did not allow the parent to see her son. Stewart continued to cry out "Why do I have to go," "Can't I just go to

the doctor," "Can my mom take me," "I want to see my mom," and "What if I have to stay there."

46.     At approximately 1:20 p.m., long after school had been dismissed for the day, Howe travelled to the Merriam because of the situation involving Stewart.

47.     At one point, Jane Doe telephoned the external mobile crisis team on her phone and put a member of the team on speakerphone, attempting to develop a plan for the mobile crisis team to meet Jane Doe and Stewart at their home so that Stewart could be screened.

48.     Schneider, Imperato, SRO Russell and/or Howe rejected this plan and continued to separate Jane Doe from her child.  SRO Russell testified that Jane Doe told him both that she did not want the child taken to the hospital and that she wanted to take the child with her. Since no crime had been committed, Schneider continued to have sole responsibility both of Merriam and of any decision pursuant to the MOU, but she wrongfully relied on the SRO and his supervisor Howe, to keep Jane Doe and Stewart separated.

49.     At that time, Jane Doe was present in a hallway of the Merriam, outside of Amitrano's office where Stewart was present.

50.     Jane Doe, upset at the racially discriminatory manner in which she was being treated by Schneider, Howe and SRO Russell, began to broadcast the incident from her cell phone camera via Facebook live.

51.     Howe, in the presence of  SRO Russell, refused to permit Jane Doe to speak with or to be with Stewart, and, further, physically blocked Jane Doe from Stewart. The video shows Howe preventing Jane Doe from accessing Stewart while Schneider ignored Jane Doe's pleas to have Schneider speak with her. On the video, Stewart can be heard calling out to his mother and Jane Doe stating that her son is calling her and she wants to speak with him.

52.     Howe prevented Jane Doe from exercising her right to be with her child by means of threats, intimidation or coercion, including, without limitation, blocking her from being with Stewart, intimidating her with his words, and, ultimately, arresting Jane Doe.

53.     At no time did SRO Russell intervene in order to permit Jane Doe to speak with and/or be with her child.

54.     Howe spoke to Jane Doe in a demeaning tone, would not permit Jane Doe to talk with her child, and falsely accused Jane Doe of pushing him.

55.     Jane Doe demanded to be with Stewart, and, further, demanded, that Stewart be released to her, but Schneider, SRO Russell and Howe, among others, acting in concert with one another and others, shockingly, improperly, repeatedly, and in a discriminatory manner, refused to allow Jane Doe access to her son and would not let her take Stewart home, even though the school day had ended and Stewart was visibly calm.

56.     In a video from the lobby of the school, Imperato is seen standing in front of Stewart, blocking Jane Doe from leaving the school with Stewart. SRO Russell is seen following Jane Doe and Stewart in the hallway prior to separating them again. The video shows Jane Doe as a calming presence to her son.

57.     While Jane Doe was present in a school hallway outside of the office where Stewart was, Howe aggravated the situation by treating Jane Doe with disdain, and by repeatedly, unhelpfully and vaguely asking Jane Doe whether she would help, and deflecting, or ignoring, without answering, her questions.

58.     When Jane Doe asked Howe if she could take her son home, Howe stated that Stewart was going to the hospital.

12

59.     Jane Doe, Stewart's primary caretaker and sole custodian, protested the decision to take Stewart to the hospital.

60.     At one point, Schneider, who maintained control of the school under the MOU with the police, is seen on video turning her back on Jane Doe and ignoring Jane Doe's pleas for help.

61.     Jane Doe complained that she and her son were being discriminated against on the basis of race – at one point saying, "If my son is a White, he would be home with the mom now."

62.     Howe told Jane Doe that she could not speak to her son.

63.     Howe, with no pedagogical justification and without good faith, used unnecessary and unreasonable force upon Jane Doe and arrested Jane Doe, even though she had engaged in no criminal conduct. He thereafter failed to file a use of force report.

64.     SRO Russell failed to intervene to prevent Howe from wrongfully arresting Jane Doe and utilizing unreasonable and excessive force.

65.     Howe later baselessly charged Jane Doe with disorderly conduct.

66.     Jane Doe's arrest, the detention of Stewart, and the separation from Stewart, were especially traumatic for Jane Doe because, in addition to her worry for Stewart, she had no prior criminal record and was completely unfamiliar with the process, so she was worried for herself as well. She spent approximately four hours at the police station behind bars in a cell, worried about Stewart, who was at the hospital without his parent or emergency contact.

67.     After Jane Doe's arrest, Stewart continued to call for his mother, was forcibly placed on a stretcher and, without his consent or the consent of Jane Doe, was taken via ambulance to Emerson Hospital without a parent or emergency contact. Imperato coldly stepped in and told 8 year old Stewart that his only option was to go to the hospital and he could talk to

13

his mother at that time. SRO Russell told the child that his mother was not at the school, but was at the police station.

68.     In at least one other incident where a student was to be hospitalized, the student, unlike Stewart, was afforded various options by the Town of Acton Police Department for travelling to the hospital.

69.     At no time did Merriam contact any emergency contact person listed in the school records for Stewart.

70.     Stewart suffered great emotional distress from the detention, the hold, the separation from his mother, and the forced hospitalization.

71.     SRO Russell, Schneider, Imperato and Medvedeff, who participated in restraining Stewart and separating him from his mother,  went to the hospital, either in the ambulance or in another vehicle, with Stewart.

72.     At the hospital, at least one or more of SRO Russell, Imperato, Schneider and/or Medvedeff disclosed private information about Stewart to doctors without the consent of Jane Doe and without ever contacting Stewart's emergency contact person. The information provided was self-serving to SRO Russell, Imperato, Schneider and/or Medvedeff and contrasted with Stewart's current presentation upon arrival at the hospital. The entirety of the information gathered about Stewart's history was provided by them. Emerson Hospital found Stewart to be cooperative with its staff, although evasive in answers. Emerson Hospital found that there was presently no acute medical issue and that Stewart was medically stable for behavioral health examination and disposition.

14

73.    An investigation by the Commonwealth of Massachusetts Department of Children and Families (hereinafter, "DCF") pursuant to Mass. Gen. Laws c. 119 §51A followed, and DCF issued a finding that the allegation of neglect was unsupported.

74.    On January 10, 2020, the disorderly conduct charge against Jane Doe was dropped before arraignment was to occur.

75.    On January 10, 2020, Stewart was released from the hospital.

76.    The Defendants discriminated against Stewart on the basis of race, color, national origin, and disability, and against Jane Doe on the basis of race, color and national origin. They did so by, among other things, the wrongful conduct of SRO Russell in participating in the above incidents, and the inappropriate and discriminatory manner in which Howe interacted with, and ultimately arrested, Jane Doe. The individual Defendants, acting in concert, also wrongfully separated Stewart and Jane Doe, at a time when school was already dismissed and Stewart remained calm.

77.    On or about January 30, 2020, in an apparent attempt to try to defend itself against allegations of racial discrimination, the Defendant Town of Acton issued a news statement in the Acton Town News section of the Town of Acton website concerning the case, https://www.acton-ma.gov/civicalerts.aspx?AID=1104 , which statement revealed private information about Plaintiffs, some of which is believed to have originated from Merriam, concerning the January 9, 2020 incident (and alleged incidents on January 7 and 8, 2020). That statement includes links to redacted police reports about all three alleged incidents, which made identifying the involved family simple and easy. The statement, with attached redacted police reports, remains posted on the Town of Acton website as of November 14, 2021, almost two years after the January 9, 2020 incident. The public release of this information has been a cause

of emotional distress for Plaintiffs, who are one of the relatively few black families in the Town

of Acton. The personal information recited in the statement were disclosed publicly without the

Town of Acton first obtaining any consent or permission to do so.

78.     The Acton Town News section of the Town of Acton website focuses upon

general town issues (coronavirus updates, paving updates, town meeting updates, etc.), not upon

persons who are arrested in the Town of Acton. Plaintiffs are not aware of postings in that

section of the Town of Acton website of other arrests or incidents involving minors from

January, 2020 to the present.

79.     On or about June 11, 2020, Town of Acton posted a redacted version of an

investigative report dated April 16, 2020 prepared by a third party on its behalf relating to the

incident on the Town of Acton website, where it remains available to the public to through at

least November 14, 2021.  http://doc.acton-ma.gov/dsweb/Get/Document-72860/  The redacted

report still contains significant private information pertaining to Jane Doe, and private and

personally identifiable information about Stewart gathered from Stewart's education records,

interviews of non-percipient witnesses from the school and the school's crisis intervention team,

upon information and belief disclosed by one or more of the Defendants.  The information was

not compiled to promote a legitimate educational interest.  That report found, among other

things, that Howe violated the Use of Force policy by failing to complete a Use of Force report

in connection with the arrest of Jane Doe.  While that report stopped short of concluding that

Howe and SRO Russell did not treat Jane Doe or Stewart differently on the basis of their race,

the report did recommend implicit bias training. Importantly, Town of Acton and its agents and

employees chose the specific private law firm who authored the report. Jane Doe did not

participate in that investigation, which was written solely from the perspective of the Acton Police.

80.  ABRSD also retained a private firm of their choosing to prepare an investigative report. That redacted report also contains significant private information pertaining to Jane Doe, and private and personally identifiable information about Stewart gathered from Stewart's education records, interviews of non-percipient witnesses from the school and the school's crisis intervention team, upon information and belief disclosed by one or more of the Defendants. The information was not compiled to promote a legitimate educational interest.  While that report concluded that ABRSD did not treat Jane Doe or Stewart differently on the basis of their race, ABRSD and its officers, agents, servants and employees chose the specific private law firm who authored the report. Jane Doe did not participate in that investigation, which was written solely from the perspective of ABRSD.

81.  As a result of the incident at Merriam, Stewart was transferred to another ABRSD school, Conant, at the end of January of 2020. Stewart's IEP continued to provide for a full inclusion program. Pull out services were limited to two 30 minute sessions per week with the school psychologist and three 30 minute sessions with a special educator or special education assistant. Push-in services consisted of 450 minutes per week (or 90 minutes per day) of support by a special educator or special education assistant. The goals included a modality no smaller than small groups as his IEP documented that Stewart participates better in a small group setting than 1:1 with the teacher because he is too self-conscious in the individual setting.

82.  On or about March 6, 2020, Jane Doe learned that ABRSD, unilaterally and without convening an IEP meeting, instituted a 1:1 aide, depriving Stewart of learning in the least restrictive environment as dictated by the IEP in place at that time. Jenna Zamary

(hereinafter, "Zamary"), Stewart's second grade regular education teacher at Conant, an elementary school teacher for five years during the relevant time period, received her bachelor's degree in elementary education and her master's degree in moderate disabilities. She already had a part time classroom assistant when Stewart joined her class. After Stewart left her classroom multiple times on his first day of class on or about January 28, 2020, Zamary went to Conant's Principal, Damian Sugrue (hereinafter, "Sugrue"), and requested "another set of hands." She understood that Nick Cabana (hereinafter, "Cabana") was assigned as a 1:1 for Stewart as a result of her request. Zamary did not inform Jane Doe of either her request or about Cabana being implemented as the 1:1 for Stewart. She believed it was the role of Sugrue, or Stewart's special educator, to inform Jane Doe about the imposition of a 1:1.

83.    Cabana started at Conant shortly thereafter. Although Interim Special Education Director Deborah Dixson (hereinafter, "Dixson") hired Cabana to provide the in-class support of 90 minutes daily pursuant to Stewart's B-grid in his IEP, Cabana helped Stewart with the morning greeting, math, his Rubik's cube, played basketball with Stewart, provided behavioral management, instructional support, and assisted Stewart with activities of daily life like walking. He accompanied Stewart to the cafeteria even when he was the only adult sitting with children. Stewart informed his mother that Cabana escorted him everywhere, even the bathroom and waited outside for him. Zamary confirmed that Cabana was "definitely" just for Stewart.

84.    Dr. Evelyn Harriott (hereinafter, "Harriott") the school psychologist at the Conant noted "anytime" she saw Stewart, Cabana was with him, including in class, outside of class, the cafeteria, walking in the hallway, and going to her office. While Dr. Harriott was not aware of what Cabana's purpose was in walking through the hall with Stewart, she observed them to be together.

18

85.     Sugrue had yet another belief about Cabana's purpose than Jane Doe (1:1), Zamary (1:1), Dixson (in class support for 90 minutes), and Harriott (no idea): he believed Cabana was a transitional intervention for Stewart, despite still being present at nearly every moment of the day with Stewart nearly three months after Stewart arrived at Conant. Harriott was unclear how Cabana's presence was helping Stewart to adjust, as her job as the school psychologist was to help the child adjust and she did not know how adding Cabana was helpful. Harriott explained that given Stewart's diagnosis, and that he was trying to adjust to a new place, she thought being in the presence of another adult at all times made him stand out, made other students look at him, and wonder what's wrong with him. Harriott stated that it was not helpful and was more off-putting, not helping him form relationships with the other kids.

86.     Dr. Jeffrey Ristaino (hereinafter, "Ristaino"), Stewart's pediatrician since birth, noted that Stewart expressed concern about the stress to Stewart of having 1:1 supervision throughout the school day and that it interfered with Stewart's ability to establish social connections with his peers. Ristaino recommended that Stewart not be required to have 1:1 supervision.

87.     Once Jane Doe learned of the 1:1 and confronted Sugrue about Cabana's purpose, ABRSD immediately made adjustments to Cabana's role. Sugrue told Jane Doe that Conant held a meeting without inviting her and hired Cabana. Sugrue wrote to Jane Doe that he would speak with Stewart's teacher and any assistants in the classroom to ask that Stewart be allowed to leave the classroom alone. As a result of the hostile and intimidating non-least restrictive environment created by Conant's unilateral imposition of a 1:1, Stewart only attended eleven in person days at Conant. This unilateral imposition of a 1:1 was done in such a confusing, deceptive, and secretive process that it departed substantially from accepted professional judgment, practice and

19

standards, denied Stewart a FAPE, violated IDEA, denied Stewart's right to be in the least

restrictive environment, and violated Section 504.

88.     As a direct and proximate result of the wrongful discrimination of Town of

Acton, through their officers, agents, servants or employees, including, without limitation, Howe

and SRO Russell, Stewart and Jane Doe have suffered, and continue to suffer, damages,

including, without limitation, significant mental anguish, physical manifestations of

psychological injury, a loss of consortium, a loss of education, and emotional distress.

89.     On or about October 29, 2020, Jane Doe, as parent of Stewart, filed a Request for

Due Process Hearing at the BSEA arising out of, among other things, the events of January 9,

2020 at Merriam and the January-March 2020 events at Conant. The Request for Hearing

included the following common law and statutory claims: IDEA, 20 U.S.C. §§1400 *et seq.*;

Section 504, 29 U.S.C. §794; Federal Family Educational Rights and Privacy Act, 20 U.S.C.

§1232g; Title II of the ADA, 42 U.S.C. §12101 *et seq.*; Title VI of the Civil Rights Act of 1964,

42 U.S.C. §2000d *et seq.*; violations of the Fourteen and Fourth Amendments to the United

States Constitution, Mass Gen Laws. c. 71B, c. 93 §102, c. 12 §11H and I, c. 71 §37O, c. 71

§37P, c. 123 §12, c. 76 §5, c. 272 §§92A and 98, 42 U.S.C. §§1981, 1983, and 1985, common

law negligence per Mass. Gen. Laws c. 258; intentional infliction of emotional distress, loss of

consortium, false imprisonment, false arrest, 603 CMR 23, 26.00, 28, and 49; and various

ABRSD policies. Among the many issues raised in the 21 page Request for Hearing, Jane Doe,

as the parent of Stewart, raised whether the ABRSD, itself and as an agent of the Town of Acton,

discriminated against 8 year old Stewart who is Black, on the basis of race, ethnicity, color,

disability, and English Language Learner status, at Merriam, where, among other things, (i)

Stewart has a developmental and socio-emotional disability in his IEP, (ii) Stewart was

chronically bullied at school, (iii) the school created a hostile environment, (iv) the school

departed from the school's written policies and procedures in providing bullying prevention and

intervention, (v) the school failed to investigate and to intervene after reports of chronic bullying

by a peer, (vi) the school failed to convene Stewart's IEP team to address the bullying, (vii) the

school repeatedly involved the SRO in minor non-criminal incidents involving manifestations of

Stewart's emotional disability in deviation from ABRSD's own policies and procedures

involving SROs, (viii) the school required Stewart, a second grader, to clean up a classroom that

was disrupted during his emotional dysregulation prior to being able to resume his learning on

two separate occasions, (ix) the school prevented him from going to the bathroom until he

cleaned up the office in which he had dysregulated, (x) the school forced the separation of 8 year

old Stewart from his mother on January 9,2020 when she attempted to pick him up at the end of

an early dismissal day, (xi) the school unlawfully seized Stewart and his mother, and used

excessive and unreasonable force upon them on January 9, 2020, (xii) the school failed to contact

any of Stewart's (or his siblings') emergency contacts once his mother was arrested on school

property and the school, without reasonable basis, sent Stewart to the hospital, (xiii) the school

disclosed private and/or false information (including, without limitation, information about

Stewart's school records) about Stewart to hospital officials without authorization, and school

officials accompanied Stewart in an ambulance to the hospital without his mother's permission,

(xiv) the school disclosed private information about Stewart to the Town of Acton police

department, which later, on January 30, 2020, published said information (including, without

limitation, police reports from an SRO from his work at Merriam) on its website, where it

remains to this day, (xv) the school conspired with the SRO and police falsely to arrest his

mother and baselessly Section 12 Stewart at the school on January 9, 2020, and (xvii) the school

21

involved the SRO to investigate Stewart and his sibling's absences from school in the aftermath of these incidents in violation of the District policy that SROs should not be involved with truancy, all of which caused Stewart to suffer, and to continue to suffer from, physical and emotional damages, as well as other damages. The Request for Hearing also raised the issues of whether the School District discriminated and retaliated against Jane Doe and Stewart, who are both Black, at Conant on the basis of race, ethnicity, color, disability, and English language learner status where Stewart has a developmental and socio-emotional disability in his IEP and the school implemented a 1:1 aide on Stewart in the school setting without the knowledge and consent of his mother, without convening a special education team, and without a formal amendment to his IEP or written agreement from his mother to an amendment, thereby preventing Stewart from learning in the least restrictive environment, all of which caused Stewart to suffer, and to continue to suffer from, physical and emotional damages, as well as other damages.

90.     On or about October 29, 2020, Jane Doe, individually and on behalf of Stewart, filed a Complaint against Town of Acton, the Town of Acton Police Department, Howe and SRO Russell at the Massachusetts Commission Against Discrimination ("MCAD").

91.     In the MCAD Complaint, Stewart alleged claims for racial/color and disability discrimination in violation of various state and federal statutes.

92.     In the MCAD Complaint, Jane Doe alleged claims for discrimination on the basis of race and/or color in violation of various state and federal statutes.

93.     On January 27, 2021, Jane Doe and Stewart sent a timely Notice of Claims Pursuant to Mass. Gen. Laws c. 258 §4 ("258 Notice") to the appropriate persons at ABSRD and the Town of Acton.

94.     To date, Jane Doe and Stewart have received no response to the 258 Notice, and, at this point, more than six months have passed.

95.     On March 12, 2021, the BSEA (Reichbach, Hearing Officer) dismissed Jane Doe's non-IDEA claims, including, without limitation, any claims relating to racial discrimination, for lack of jurisdiction, and held for hearing claims under Section 504 and IDEA concerning, in essence, bullying, changes in Stewart's IEP services, the involvement of the SRO in the dysregulation of Stewart in January, 2020, and the imposition of inappropriate consequences or punishment to Stewart, as well as claims relating to whether Jane Doe had rejected the IEP and whether the IEP was reasonably calculated to provide Stewart with free access to public education.  The Hearing Officer wrote that "to the extent Parent intended to bring her non-disability discrimination claims under the following statutes and regulation, I find that the IDEA does not require exhaustion:  Title VI of the Civil Rights Act of 1964;  Due Process Clause of the 14th Amendment to the United States Constitution;  42 U.S.C. §§1981, 1983 and 1985;  M.G.L. c. 93 §102; M.G.L. c. 12 §§H and I, M.G.L. c. 76 §5 and/or 603 CMR 26.00."

96.     On March 31, 2021, the MCAD issued a Dismissal and Notice of Right to Appeal, finding, in essence, that the MCAD has limited jurisdiction in educational matters.

97.     On April 12, 2021, Jane Doe appealed the MCAD ruling, alerting the MCAD to the fact that its decision only dealt with Stewart, and, further, asserting that Jane Doe was discriminated against in a place of public accommodation.

98.     The BSEA matter proceeded to a multi-day hearing on various claims under Section 504 and the IDEA.

99.     The BSEA (Reichbach, Hearing Officer) heard testimony on May 11, 2021, May 12, 2021, May 13, 2021, May 14, 2021 and June 7, 2021.

100.    On June 2, 2021, the MCAD affirmed the dismissal of the complaint.

101.    On August 18, 2021, the BSEA issued a Decision finding, in essence, that Stewart was not entitled to any relief based on his Section 504 and IDEA claims. (*See* **Exhibit A**).

102.    Jane Doe, Individually and as mother and next friend of Stewart, has exhausted all administrative remedies, to the extent necessary.

<u>COUNT I</u>
**CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §1983**
**(Jane Doe, Individually v. Defendants Howe and SRO Russell)**
**(Wrongful arrest of Jane Doe and forcible separation of Parent and Child)**

103.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 102 of the Complaint as if expressly set forth herein.

104.    This Count is brought by Jane Doe, Individually, again Howe and SRO Russell, individually, for civil rights violations pursuant to 42 U.S.C. §1983 arising out of the wrongful arrest of Jane Doe.

105.    The actions of Howe and SRO Russell, acting jointly and in concert with one another and/or individually and/or with Schneider, Medvedeff and/or Imperato, in, among other things, (a) wrongfully preventing Jane Doe from accessing Stewart, and preventing Stewart from accessing his mother, (b) wrongfully interfering with Jane Doe's parental rights, (c) wrongfully refusing to permit Jane Doe to leave Merriam with Stewart at a time when the school day had ended, (d) arresting and handcuffing Jane Doe without probable cause, (e) using excessive force in arresting Jane Doe, (f), as to SRO Russell, failing to intervene when Howe prevented Jane Doe from being with Stewart, (g), as to SRO Russell, failing to intervene to prevent Howe from wrongfully arresting Jane Doe, (h), as to SRO Russell, failing to intervene to prevent Howe

24

from utilizing unreasonable and excessive force while arresting Jane Doe, (i) falsely and

maliciously charging Jane Doe with disorderly conduct, and (j) discriminating against Jane Doe

on the basis of her race, ethnicity and/or national origin, were done maliciously, grossly

negligently, with deliberate indifference, intentionally and/or recklessly under color of law and

without justification or probable cause.

106.    Said conduct thereby obstructed the course of justice and deprived Plaintiff Jane

Doe of numerous federal constitutional rights, including, but not limited to, freedom from

unreasonable search and seizure under the Fourth Amendment and Article XIV of the

Massachusetts Declaration of Rights, freedom from false arrest, freedom of a parent to access,

and/or to control a child, freedom from excessive force, freedom from false accusations,

constitutionally-protected parental custodial rights, substantive and procedural due process and

equal protection under the Fifth and Fourteenth Amendments and Article XII of the

Massachusetts Declaration of Rights, privileges and immunities under Article IV, and freedom

from intimidation and humiliation.

107.    As a direct and proximate result of the aforesaid acts of Howe and SRO Russell,

who were acting under color of law, Plaintiff Jane Doe has suffered from, and will continue to

suffer from mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, Individually, requests that this Court:

1.  Award Plaintiffs compensatory damages;
2.  Award Plaintiffs punitive damages;
3.  Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
4.  Award such further relief as this Court may deem necessary and appropriate.

## COUNT II
### CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §1983
#### (Jane Doe, as Mother and Next Friend of Stewart v. Defendants Howe and SRO Russell)
#### (Mistreatment of Stewart)

108.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 107 of the Complaint as if expressly set forth herein.

109.    This Count is brought by Jane Doe, as mother and next friend of Stewart, against Howe and SRO Russell, individually, for civil rights violations pursuant to 42 U.S.C. §1983 arising out of the mistreatment of Stewart.

110.    The actions of Howe and SRO Russell, acting jointly and in concert with one another and/or individually and/or with Schneider, Medvedeff, and/or Imperato, in, among other things, (a) wrongfully preventing Stewart from accessing his mother, (b) wrongfully refusing to permit Stewart to leave the school when the school day was over, (c) wrongfully failing to protect Stewart, (d), as to SRO Russell, failing to intervene when Howe prevented Jane Doe from being with Stewart, (e) discriminating against Jane Doe and Stewart on the basis of their race, ethnicity and/or national origin, (f) wrongfully detaining Stewart, and (g) wrongfully using excessive force on Stewart and without proper safety restraint training and/or failing to prevent the wrongful use of excessive force on Stewart, were done maliciously, grossly negligently, with deliberate indifference, intentionally and/or recklessly under color of law and without justification or probable cause.

111.    Said conduct thereby obstructed the course of justice and deprived Plaintiff Stewart of numerous federal constitutional rights, including, but not limited to, freedom from unreasonable search and seizure under the Fourth Amendment and Article XIV of the Massachusetts Declaration of Rights, freedom of a child to access a parent, right to bodily

26

integrity, freedom from excessive force, freedom from false accusations, substantive and procedural due process and equal protection under the Fifth and Fourteenth Amendments and Article XII of the Massachusetts Declaration of Rights, privileges and immunities under Article IV, and freedom from intimidation and humiliation.

112.    As a direct and proximate result of the aforesaid acts of Howe and SRO Russell, who were acting under color of law, Plaintiff Stewart has suffered from, and will continue to suffer from mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, as Mother and Next Friend of Stewart, requests that this Court:

1.  Award Plaintiffs compensatory damages;
2.  Award Plaintiffs punitive damages;
3.  Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
4.  Award such further relief as this Court may deem necessary and appropriate.

**COUNT III**
**CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §1983**
**(Jane Doe, Individually v. Defendants Schneider and Imperato)**
**(Forcible separation of Parent and Child)**

113.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 112 of the Complaint as if expressly set forth herein.

114.    This Count is brought by Jane Doe, Individually, against Schneider and Imperato, individually, for civil rights violations pursuant to 42 U.S.C. §1983 arising out of their forcible separation of Jane Doe from her child.

115.    The actions of Schneider and Imperato, acting jointly and in concert with one another and/or individually and/or with Howe and/or SRO Russell and/or others, in, among other things,  (a) wrongfully and forcibly separating Jane Doe from Stewart, (b) wrongfully interfering with Jane Doe's parental rights, (c) wrongfully refusing to permit Jane Doe to leave Merriam

with Stewart at a time when the school day had ended, and (d) discriminating against Jane Doe on the basis of her race, ethnicity and national origin, were done maliciously, grossly negligently, with deliberate indifference, intentionally and/or recklessly under color of law and without justification or probable cause.

116.    Said conduct thereby obstructed the course of justice, shocks the conscience, and deprived Plaintiff Jane Doe of numerous federal constitutional rights, including, but not limited to, freedom from unreasonable search and seizure under the Fourth Amendment and Article XIV of the Massachusetts Declaration of Rights, freedom from false arrest, freedom from excessive force, freedom from false accusations, freedom of a child to access a parent and freedom of a parent to access and/or to control, a child, fundamental parental rights, substantive and procedural due process and equal protection under the Fifth and Fourteenth Amendments and Article XII of the Massachusetts Declaration of Rights, privileges and immunities under Article IV, and freedom from intimidation and humiliation.

117.    As a direct and proximate result of the aforesaid acts of Schneider and Imperato, who were acting under color of law, Plaintiff Jane Doe has suffered from, and will continue to suffer from mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, Individually, requests that this Court:

1.    Award Plaintiffs compensatory damages;
2.    Award Plaintiffs punitive damages;
3.    Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
4.    Award such further relief as this Court may deem necessary and appropriate.

28

**COUNT IV**
**CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §1983**
**(Jane Doe, as Mother and Next Friend of Stewart v. Defendants Schneider, Medvedeff and Imperato)**
**(Forcible separation of Parent and Child/Excessive force on Child)**

118.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 117 of the Complaint as if expressly set forth herein.

119.    This Count is brought by Jane Doe, as mother and next friend of Stewart, against Schneider, Medvedeff and Imperato, individually, for civil rights violations pursuant to 42 U.S.C. §1983 arising out of their forcible separation of Jane Doe from her child and the use of excessive force on the child.

120.    The actions of Schneider, Medvedeff and Imperato, acting jointly and in concert with one another and/or individually and/or with Howe and/or SRO Russell and/or others, in, among other things, (a) wrongfully and forcibly separating Stewart from his mother, (b) wrongfully refusing to permit Stewart to leave Merriam at a time when the school day had ended, (c) wrongfully failing to protect Stewart, (d) discriminating against Stewart on the basis of his race, ethnicity and national origin,  (e) directing and/or allowing untrained individuals to restrain Stewart, (f) wrongfully detaining Stewart, (g) wrongfully using excessive force on Stewart and/or failing to prevent the wrongful use of excessive force on Stewart, (h) directing and/or allowing untrained individuals to restrain Stewart, and (i) failing to prevent the wrongful use of excessive force on Stewart, were done maliciously, grossly negligently, with deliberate indifference, intentionally and/or recklessly under color of law and without justification or probable cause.

121.    Said conduct thereby obstructed the course of justice, shocks the conscience, and deprived Stewart of numerous federal constitutional rights, including, but not limited to, freedom

29

from unreasonable search and seizure under the Fourth Amendment and Article XIV of the

Massachusetts Declaration of Rights, freedom from excessive force, freedom from false

accusations, freedom of a child to access a parent and freedom of a parent to access and/or to

control a child, parental rights, substantive and procedural due process and equal protection

under the Fifth and Fourteenth Amendments and Article XII of the Massachusetts Declaration of

Rights, privileges and immunities under Article IV, and freedom from intimidation and

humiliation.

122.    As a direct and proximate result of the aforesaid acts of Schneider, Medvedeff,

and Imperato, who were acting under color of law, Plaintiff Stewart has suffered from, and will

continue to suffer from mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, as Mother and Next Friend of Stewart, requests that

this Court:

1.    Award Plaintiffs compensatory damages;
2.    Award Plaintiffs punitive damages;
3.    Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus
interest;  and
4.    Award such further relief as this Court may deem necessary and appropriate.

**COUNT V**
**COMMON LAW CONSPIRACY TO VIOLATE CIVIL RIGHTS PURSUANT TO**
**42 U.S.C. §1983**
**(Jane Doe, Individually and as Mother and Next Friend of Stewart v. Defendants Howe,**
**SRO Russell, Schneider, Medvedeff and Imperato)**

123.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through

122 of the Complaint as if expressly set forth herein.

124.    This Count is brought by Jane Doe, individually and as mother and next friend of

Stewart, against Howe, SRO Russell, Schneider, Medvedeff and Imperato, individually, for

conspiracy to violate civil rights pursuant to 42 U.S.C. §1983.

125.    The actions of each individual Defendant, acting jointly and in concert in furtherance of said conspiracy, in, among other things, (a) wrongfully preventing Jane Doe from accessing Stewart, and preventing Stewart from accessing his mother, (b) wrongfully interfering with Jane Doe's parental rights, (c) wrongfully refusing to permit Jane Doe to leave Merriam with Stewart at a time when the school day had ended, (d) wrongfully failing to protect Stewart, (e) arresting and handcuffing Jane Doe without probable cause, (f) using excessive force in arresting Jane Doe, (g), as to SRO Russell, failing to intervene when Howe prevented Jane Doe from being with Stewart, (h), as to SRO Russell, failing to intervene to prevent Howe from wrongfully arresting Jane Doe, (i), as to SRO Russell, failing to intervene to prevent Howe from wrongfully utilizing unreasonable and excessive force in arresting Jane Doe, (j) falsely and maliciously charging Jane Doe with disorderly conduct, (k) discriminating against Jane Doe and Stewart on the basis of their race, ethnicity and/or national origin, (l) wrongfully detaining Stewart, (m) wrongfully using excessive force on Stewart and/or failing to prevent the wrongful use of excessive force on Stewart, and (n) directing and/or allowing untrained individuals to restrain Stewart, (o) wrongfully detaining Stewart, (p) wrongfully using excessive force on Stewart and/or failing to prevent the wrongful use of excessive force on Stewart, and/or directing and/or allowing untrained individuals to restrain Stewart, and/or (q) failing to prevent the wrongful use of excessive force on Stewart, were done maliciously, grossly negligently, with deliberate indifference, intentionally and/or recklessly under color of law and without justification or probable cause.

126.    Said conduct thereby obstructed the course of justice and deprived Plaintiffs of numerous federal constitutional rights, including, but not limited to, freedom from unreasonable search and seizure under the Fourth Amendment and Article XIV of the Massachusetts

Declaration of Rights, freedom from excessive force, freedom from false arrest, freedom from false accusations, freedom of a child to access a parent and freedom of a parent to access and/or to control a child, constitutionally-protected parental custodial rights, right to bodily integrity, due process and equal protection under the Fifth and Fourteenth Amendments and Article XII of the Massachusetts Declaration of Rights, privileges and immunities under Article IV, and freedom from intimidation and humiliation.

127.    As a direct and proximate result of the aforesaid conspiracy of the individual Defendants, who were acting under color of law, Plaintiffs have suffered from, and will continue to suffer from, mental anguish and other damages.

**WHEREFORE**, Plaintiffs Jane Doe, Individually and as Mother and Next Friend of Stewart, request that this Court:

1. Award Plaintiffs compensatory damages;
2. Award Plaintiffs punitive damages;
3. Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest; and
4. Award such further relief as this Court may deem necessary and appropriate.

## COUNT VI
### CONSPIRACY TO VIOLATE CIVIL RIGHTS LAWS PURSUANT TO 42 U.S.C. §1985
**(Jane Doe, Individually and as Mother and Next Friend of Stewart v. Defendants Howe, SRO Russell, Schneider and Imperato)**

128.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 127 of the Complaint as if expressly set forth herein.

129.    This Count is brought by Jane Doe, Individually and as mother and next friend of Stewart, against Howe, SRO Russell, Schneider and Imperato, individually, for conspiracy to violate civil rights pursuant to 42 U.S.C. §1985.

130.    By means of the acts described herein, Howe, SRO Russell, Schneider and

Imperato, acting under color of law, did conspire with each other and others, with a purpose of

depriving, directly or indirectly, Jane Doe and Stewart, who are Black and members of a

protected class, of equal protection of the laws and/or equal privileges and immunities under the

law, and with purposeful intent to discriminate against Jane Doe and Stewart on the basis of their

race, ethnicity and/or color, to deprive Jane Doe and Stewart of their respective constitutional

rights.

131.    As a direct and proximate result of the wrongful conduct of Howe, SRO Russell,

Schneider and Imperato in furtherance of the conspiracy, Jane Doe and Stewart suffered injury

and a deprivation of their respective rights and privileges as citizens of the United states.

**WHEREFORE,** Plaintiffs Jane Doe, Individually and as Mother and Next Friend of

Stewart, request that this Court:

1.   Award Plaintiffs compensatory damages;
2.   Award Plaintiffs punitive damages;
3.   Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
4.   Award such further relief as this Court may deem necessary and appropriate.

## COUNT VII
### CIVIL RIGHTS VIOLATIONS PURSUANT TO M.G.L. c.12 §§11H and 11I
### (Jane Doe, Individually v. Defendants Howe and SRO Russell)
### (Wrongful arrest of Jane Doe and separation of Parent and Child)

132.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through

121 of the Complaint as if expressly set forth herein.

133.    This Count is brought by Jane Doe, Individually, against Howe and SRO Russell,

individually, for civil rights violations pursuant to Mass. Gen Laws c. 12 §§11H and 11I arising

out of the wrongful arrest of Jane Doe and the forcible separation of the parent and Stewart.

134.     The actions of Howe and SRO Russell, acting jointly and in concert with one

another and/or individually and/or with Schneider and/or Imperato, in, among other things, (a)

wrongfully preventing Jane Doe from accessing Stewart, and preventing Stewart from accessing

his mother, (b) wrongfully interfering with Jane Doe's parental rights, (c) wrongfully refusing to

permit Jane Doe to leave Merriam with Stewart at a time when the school day had ended, (d)

arresting and handcuffing Jane Doe without probable cause, (e) using excessive force in arresting

Jane Doe, (f), as to SRO Russell, failing to intervene when Howe prevented Jane Doe from being

with Stewart, (g), as to SRO Russell, failing to intervene to prevent Howe from wrongfully

arresting Jane Doe, (h) as to SRO Russell, failing to intervene to prevent Howe from wrongfully

utilizing unreasonable and excessive force in arresting Jane Doe, (i) falsely and maliciously

charging Jane Doe with disorderly conduct, and (j) discriminating against Jane Doe on the basis

of her race, ethnicity and/or national origin, were done maliciously, grossly negligently, with

deliberate indifference, intentionally and/or recklessly under color of law and without

justification or probable cause.

135.     In the actions set forth above, SRO Russell and Howe, jointly and in concert with

one another and others, and individually, while acting under color of law, interfered by threats,

intimidation or coercion, or attempted to interfere by threats, intimidation or coercion, with the

exercise or enjoyment by Plaintiff Jane Doe of her rights secured by the constitution or laws of

the United States and/or the Commonwealth of Massachusetts, including, without limitation,

freedom from unreasonable search and seizure under the Fourth Amendment and Article XIV of

the Massachusetts Declaration of Rights, freedom from excessive force, freedom from false

arrest, freedom from false accusations, freedom of a child to access a parent and freedom of a

parent to access, and to control, a child, parental rights, right to bodily integrity, due process and

34

equal protection under the Fifth and Fourteenth Amendments and Article XII of the

Massachusetts Declaration of Rights, privileges and immunities under Article IV, and freedom

from intimidation and humiliation, as secured by the state and federal constitutional and statutory

provisions and/or by the common law, all in violation of M.G.L. c.12 §§11H and 11I.

136.    As a direct and proximate result of the aforesaid acts of Howe and SRO Russell,

who were acting under color of law, Plaintiff Jane Doe has suffered from, and will continue to

suffer from mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, Individually, requests that this Court:

1. Award Plaintiffs compensatory damages;
2. Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest; and
3. Award such further relief as this Court may deem necessary and appropriate.

### COUNT VIII
### CIVIL RIGHTS VIOLATIONS PURSUANT TO M.G.L. c.12 §§11H and 11I
### (Jane Doe, as Mother and Next Friend of Stewart v. Defendants Howe and SRO Russell)
### (Mistreatment of Child)

137.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through

136 of the Complaint as if expressly set forth herein.

138.    This Count is brought by Jane Doe, as mother and next friend of Stewart, against

Howe and SRO Russell, individually, for civil rights violations pursuant to Mass. Gen Laws c.

12 §§11H and 11I arising out of the wrongful arrest of Jane Doe and the forcible separation of

the parent and Stewart.

139.    The actions of Howe and SRO Russell, acting jointly and in concert with one

another and/or individually and/or with Schneider and/or Imperato, in, among other things, (a)

wrongfully preventing Stewart from accessing his mother, (b) wrongfully refusing to permit

Stewart to leave the school when the school day was over, (c) wrongfully failing to protect

Stewart, (d), as to SRO Russell, failing to intervene when Howe prevented Jane Doe from being with Stewart, (e) discriminating against Jane Doe and Stewart on the basis of their race, ethnicity and/or national origin, (f) wrongfully detaining Stewart, and (g) wrongfully using excessive force on Stewart and/or failing to prevent the wrongful use of excessive force on Stewart, were done maliciously, grossly negligently, with deliberate indifference, intentionally and/or recklessly under color of law and without justification or probable cause.

140.    In the actions set forth above, SRO Russell and Howe, jointly and in concert with one another and others, and individually, while acting under color of law, interfered by threats, intimidation or coercion, or attempted to interfere by threats, intimidation or coercion, with the exercise or enjoyment by Plaintiff Stewart of his rights secured by the constitution or laws of the United States and/or the Commonwealth of Massachusetts, including, without limitation, freedom from unreasonable search and seizure under the Fourth Amendment and Article XIV of the Massachusetts Declaration of Rights, freedom from excessive force, right to bodily integrity, freedom from false accusations, freedom of a child to access a parent, due process and equal protection under the Fifth and Fourteenth Amendments and Article XII of the Massachusetts Declaration of Rights, privileges and immunities under Article IV, and freedom from intimidation and humiliation, as secured by the state and federal constitutional and statutory provisions and/or by the common law, all in violation of M.G.L. c.12 §§11H and 11I.

141.    As a direct and proximate result of the aforesaid acts of Howe and SRO Russell, who were acting under color of law, Plaintiff Stewart has suffered from, and will continue to suffer from mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, as Mother and Next Friend of Stewart, requests that this Court:

36

1. Award Plaintiffs compensatory damages;
2. Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
3. Award such further relief as this Court may deem necessary and appropriate.

## COUNT IX
### CIVIL RIGHTS VIOLATIONS PURSUANT TO M.G.L. c.12 §§11H and 11I
### (Jane Doe, Individually v. Defendants Schneider and Imperato)
### (Forcible separation of Parent and Child)

142.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 141 of the Complaint as if expressly set forth herein.

143.    This Count is brought by Jane Doe, Individually, against Schneider and Imperato, individually, for civil rights violations pursuant to M.G.L. c. 12 §§11H and 11I arising out of their forcible separation of Jane Doe from her Child.

144.    The actions of Schneider and Imperato, acting jointly and in concert with one another and/or individually and/or with Howe and/or SRO Russell and/or others, in, among other things, (a) wrongfully and forcibly separating Jane Doe from Stewart, (b) wrongfully interfering with Jane Doe's parental rights, (c) wrongfully refusing to permit Jane Doe to leave Merriam with Stewart at a time when the school day had ended, and (d) discriminating against Jane Doe on the basis of her race, ethnicity and national origin, were done maliciously, grossly negligently, with deliberate indifference, intentionally and/or recklessly under color of law and without justification or probable cause.

145.    In the actions set forth above, Schneider and Imperato, jointly and in concert with one another and others, and individually, while acting under color of law, interfered by threats, intimidation or coercion, or attempted to interfere by threats, intimidation or coercion, with the exercise or enjoyment by Plaintiff Jane Doe of her rights secured by the constitution or laws of the United States and/or the Commonwealth of Massachusetts, including, without limitation,

37

freedom from unreasonable search and seizure under the Fourth Amendment and Article XIV of the Massachusetts Declaration of Rights, freedom from excessive force, freedom from false arrest, freedom from false accusations, freedom of a parent to access and/or to control, a child, parental rights, due process and equal protection under the Fifth and Fourteenth Amendments and Article XII of the Massachusetts Declaration of Rights, privileges and immunities under Article IV, and freedom from intimidation and humiliation, as secured by the state and federal constitutional and statutory provisions and/or by the common law, all in violation of M.G.L. c.12 §§11H and 11I.

146. As a direct and proximate result of the aforesaid acts of Schneider and Imperato, who were acting under color of law, Plaintiff Jane Doe has suffered from, and will continue to suffer from mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe requests that this Court:

1. Award Plaintiffs compensatory damages;
2. Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest; and
3. Award such further relief as this Court may deem necessary and appropriate.

<u>**COUNT X**</u>
**CIVIL RIGHTS VIOLATIONS PURSUANT TO M.G.L. c.12 §§11H and 11I**
**(Jane Doe, as Mother and Next Friend of Stewart v. Defendants Schneider, Medvedeff and Imperato)**
**(Forcible separation of Parent and Child)**

147. Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 146 of the Complaint as if expressly set forth herein.

148. This Count is brought by Jane Doe, as mother and next friend of Stewart, against Schneider, Medvedeff and Imperato, individually, for civil rights violations pursuant to M.G.L. c. 12 §§11H and 11I arising out of their forcible separation of Jane Doe from her Child.

149.    The actions of Schneider, Medvedeff and Imperato, acting jointly and in concert with one another and/or individually and/or with Howe and/or SRO Russell, in, among other things, (a) wrongfully and forcibly separating Stewart from his mother, (b) wrongfully refusing to permit Stewart to leave Merriam at a time when the school day had ended, (c) wrongfully failing to protect Stewart, (d) discriminating against Stewart on the basis of their race, ethnicity and national origin, (e) directing and/or allowing untrained individuals to restrain Stewart, (f) wrongfully detaining Stewart, (g) wrongfully using excessive force on Stewart and/or failing to prevent the wrongful use of excessive force on Stewart, and/or (h) failing to prevent the wrongful use of excessive force on Stewart, were done maliciously, grossly negligently, with deliberate indifference, intentionally and/or recklessly under color of law and without justification or probable cause.

150.    In the actions set forth above, Schneider and SRO Russell, jointly and in concert with one another and others, and individually, while acting under color of law, interfered by threats, intimidation or coercion, or attempted to interfere by threats, intimidation or coercion, with the exercise or enjoyment by Plaintiff Stewart of his rights secured by the constitution or laws of the United States and/or the Commonwealth of Massachusetts, including, without limitation, freedom from unreasonable search and seizure under the Fourth Amendment and Article XIV of the Massachusetts Declaration of Rights, freedom from excessive force, right to bodily integrity, freedom from false accusations, freedom of a child to access a parent, due process and equal protection under the Fifth and Fourteenth Amendments and Article XII of the Massachusetts Declaration of Rights, privileges and immunities under Article IV, and freedom from intimidation and humiliation, as secured by the state and federal constitutional and statutory provisions and/or by the common law, all in violation of M.G.L. c.12 §§11H and 11I.

151.    As a direct and proximate result of the aforesaid acts of Schneider, Medvedeff and Imperato, who were acting under color of law, Plaintiff Stewart has suffered from, and will continue to suffer from mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, as Mother and Next Friend of Stewart, requests that this Court:

1.  Award Plaintiffs compensatory damages;
2.  Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
3.  Award such further relief as this Court may deem necessary and appropriate.

<u>**COUNT XI**</u>
**COMMON LAW CONSPIRACY TO VIOLATE M.G.L. c. 12 §11H and §11I**
**(Jane Doe, Individually and as Mother and Next Friend of Stewart v. Defendants Howe,**
**SRO Russell, Schneider and Imperato)**
**(Wrongful arrest of Jane Doe and separation of Parent and Child)**

152.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 151 of the Complaint as if expressly set forth herein.

153.    This Count is brought by Jane Doe, individually and as mother and next friend of Stewart, against Howe, SRO Russell, Schneider and Imperato, individually, for common law conspiracy to commit civil rights violations pursuant to Mass. Gen Laws c. 12 §§11H and 11I arising out of the wrongful arrest of Jane Doe and the forcible separation of the parent and Stewart.

154.    By means of the acts described herein, Howe, SRO Russell, Schneider and Imperato, acting under color of law, did conspire with each other and others, with a purpose of depriving, directly or indirectly, Jane Doe and Stewart, who are Black and members of a protected class, of equal protection of the laws or equal privileges and immunities under the law, and with purposeful intent to discriminate against Jane Doe and Stewart on the basis of their

race, ethnicity and/or color, to deprive Jane Doe and Stewart of their respective constitutional rights.

155.    As a direct and proximate result of the wrongful conduct of Howe, SRO Russell and Schneider in furtherance of the conspiracy, Jane Doe and Stewart suffered injury and a deprivation of their respective rights and privileges as citizens of the United States.

**WHEREFORE**, Plaintiff Jane Doe, Individually and as Mother and Next Friend of Stewart, requests that this Court:

1.    Award Plaintiffs compensatory damages;
2.    Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
3.    Award such further relief as this Court may deem necessary and appropriate.

**COUNT XII**
**FALSE IMPRISONMENT**
**(Jane Doe, Individually v. Defendants Howe and SRO Russell)**

156.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 145 of this Complaint as if expressly set forth herein.

157.    This Count is brought by Jane Doe, Individually, against Howe and SRO Russell for false imprisonment.

158.    In falsely and wrongfully detaining, arresting, confining and imprisoning Jane Doe with excessive force, without probable cause and/or other justifiable reason as set forth above, Howe and SRO Russell, jointly and in concert and individually, have committed, and/or have aided and abetted in the commission of, acts which constitute an unjustified, willful, intentional, and malicious false imprisonment of Jane Doe.

159.    As a direct and proximate result of the wrongful conduct of Howe and SRO Russell, Jane Doe has suffered from, and will continue to suffer from, physical injuries, emotional distress, mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, Individually, demands judgment against Howe and SRO Russell for damages sustained, plus interest, costs and such other relief as this Honorable Court may deem meet and just.

**COUNT XIII**
**FALSE IMPRISONMENT**
**(Jane Doe, as Mother and Next Friend of Stewart v. Defendants Howe, SRO Russell, Schneider, Medvedeff and Imperato)**

160.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 159 of this Complaint as if expressly set forth herein.

161.    This Count is brought by Jane Doe, as mother and next friend of Stewart, against Howe, SRO Russell. Schneider, Medvedeff and Imperato for false imprisonment.

162.    In falsely and wrongfully detaining, confining and imprisoning Stewart with excessive force,  without legal authority or parental consent and without probable cause as set forth above, Howe, SRO Russell, Schneider, Medvedeff and Imperato, jointly and in concert and individually, have committed, and/or have aided and abetted in the commission of, acts which constitute an unjustified, willful, intentional, and malicious false imprisonment of Stewart.

163.    As a direct and proximate result of the wrongful conduct of Howe, SRO Russell, Schneider, Medvedeff and Imperato, Stewart has suffered from, and will continue to suffer from, physical injuries, emotional distress, mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, as mother and next friend of Stewart, demands judgment against Howe, SRO Russell, Schneider, Medvedeff and Imperato for damages sustained, plus interest, costs and such other relief as this Honorable Court may deem meet and just.

42

### COUNT XIV
### ASSAULT AND BATTERY
#### (Jane Doe, Individually v. Defendant Howe)

164.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 163 of the Complaint as if expressly set forth herein.

165.    This Count is brought by Jane Doe, Individually, against Howe for assault and battery.

166.    In unjustifiably touching and using force and/or excessive force upon Jane Doe, as set forth above, Howe has committed acts which constitute an unjustified, willful, intentional, offensive, and malicious assault and battery of Jane Doe in violation of the laws of the Commonwealth of Massachusetts and common law.

167.    As a direct and proximate result of the conduct of Howe, Jane Doe has suffered from, and will continue to suffer from, emotional distress, mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe demands judgment against Howe for damages sustained, plus interest and costs and such other relief as this Honorable Court may deem meet and just.

### COUNT XV
### ASSAULT AND BATTERY
#### (Jane Doe, as Mother and Next Friend of Stewart v. Defendants SRO Russell, Schneider, Imperato and Medvedeff)

168.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 157 of the Complaint as if expressly set forth herein.

169.    This Count is brought by Jane Doe, as mother and next friend of Stewart, against SRO Russell, Schneider, Imperato and Medvedeff, individually, for assault and battery.

170.    In unjustifiably touching and using force and/or excessive force upon Stewart without parental consent or authority, as set forth above, SRO Russell, Schneider, Imperato and

Medvedeff have committed, and/or has aided and abetted in the commission of, acts which constitute an unjustified, willful, intentional, offensive, and malicious assault and battery of Stewart in violation of the laws of the Commonwealth of Massachusetts and common law.

171.    As a direct and proximate result of the conduct of SRO Russell, Schneider, Imperato and Medvedeff, Stewart has suffered from, and will continue to suffer from, emotional distress, mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, as mother and next friend of Stewart, demands judgment against SRO Russell, Schneider, Imperato and Medvedeff, for damages sustained, plus interest and costs and such other relief as this Honorable Court may deem meet and just.

**COUNT XVI**
**FALSE ARREST**
**(Jane Doe, Individually v. Defendants Howe and SRO Russell)**

172.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 171 of the Complaint, as if expressly set forth herein.

173.    This Count is brought by Jane Doe, Individually, against Howe and SRO Russell for false arrest.

174.    Howe and SRO Russell, jointly and in concert or individually, conspired to commit and/or committed an intentional and unjustified confinement and arrest, without probable cause, of Jane Doe, directly or indirectly, of which Jane Doe, while confined, was conscious and suffered harm by such confinement.

175.    As a direct and proximate result of the false arrest by Howe and SRO Russell of Jane Doe, Jane Doe has suffered, and will continue to suffer, severe emotional distress, endured physical and mental suffering, false imprisonment, false arrest, shame, humiliation, and other damages.

**WHEREFORE**, Plaintiff Jane Doe, Individually, demands judgment against Howe and SRO Russell for damages sustained, plus interest and costs, and such other relief as this Honorable Court may deem meet and just.

**COUNT XVII**
**FALSE ARREST**
**(Jane Doe, as Mother and Next Friend of Stewart v. Defendant SRO Russell)**

176.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 175 of the Complaint, as if expressly set forth herein.

177.    This Count is brought by Jane Doe, as mother and next friend of Stewart, against SRO Russell for false arrest.

178.    SRO Russell, jointly and in concert with others or individually, conspired to commit and/or committed an intentional and unjustified confinement and arrest, without probable cause, of Stewart directly or indirectly, of which Stewart, while confined, was conscious and suffered harm by such confinement.

179.    As a direct and proximate result of the false arrest by SRO Russell of Stewart, Stewart has suffered, and will continue to suffer, severe emotional distress, endured physical and mental suffering, false imprisonment, false arrest, shame, humiliation, and other damages.

**WHEREFORE**, Plaintiff Jane Doe, as mother and next friend of Stewart, demands judgment against SRO Russell for damages sustained, plus interest and costs, and such other relief as this Honorable Court may deem meet and just.

**COUNT XVIII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Jane Doe, Individually and as mother and next friend of Stewart v. Defendants Howe,**
**SRO Russell, Schneider, Imperato and Medvedeff)**

180.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 179 of the Complaint, as if expressly set forth herein.

45

181.    This Count is brought by Jane Doe, individually and as mother and next friend of Stewart, against Howe, SRO Russell, Schneider, Imperato and Medvedeff, jointly and individually, for intentional infliction of emotional distress.

182.    The knowing, intentional and/or willful conduct of Howe, SRO Russell, Schneider, Imperato and Medvedeff, as set forth above, was extreme and outrageous, beyond all possible bounds of decency, utterly intolerable in a civilized community and no reasonable person should be expected to bear it.

183.    As a direct and proximate result of the extreme and outrageous conduct of Howe, SRO Russell, Schneider, Imperato and Medvedeff, Jane Doe and Stewart have suffered, and will continue to suffer, severe emotional distress, endured physical and mental suffering, false imprisonment, false arrest, shame, humiliation, and other damages.

**WHEREFORE**, Plaintiff Jane Doe, individually and as mother and next friend of Stewart, demands judgment against Howe, SRO Russell, Schneider, Imperato and Medvedeff for damages sustained, plus interest and costs, and such other relief as this Honorable Court may deem meet and just.

## COUNT XIX
### MASS. GEN. LAWS C. 214 §1B/PUBLIC DISCLOSURE OF PRIVATE FACTS
**(Jane Doe, as mother and next friend of Stewart v. Defendants Town of Acton, Acton-Boxborough Regional School District, SRO Russell, Schneider, Medvedeff and Imperato)**

184.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 183 of the Complaint, as if expressly set forth herein.

185.    This Count is brought by Jane Doe, as mother and next friend of Stewart, against Town of Acton, ABRSD, Schneider, Imperato and Medvedeff, jointly and individually, for violation of Mass. Gen. Laws c. 214 §1B.

186.    Mass. Gen. Laws c. 214 §1B provides as follows:

> A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages.

187.    By making public disclosure of (1) unauthorized, confidential, and private information about Stewart to Emerson Hospital and (2) private information about Stewart on the internet, and (3) personally identifiable information gathered from Stewart's education records in an internal complaint investigation report which the Acton Police Department published on the internet, all in a manner which was not intended to promote a legitimate educational interest, Town of Acton, through its officers, agents, servants, or employees, including, without limitation, SRO Russell and  ABRSD, through its officers, agents, servants, or employees, including, without limitation, Schneider, Imperato and Medvedeff, each disclosed private facts about Stewart and committed an unreasonable, substantial and/or serious interference with Stewart's privacy in violation of common law and statutory law.

188.    As a direct and proximate result of the conduct and/or omissions of both  Town of Acton, through its officers, agents, servants, or employees, including, without limitation, SRO Russell and ABRSD, through its officers, agents, servants, or employees, including, without limitation, Schneider, Imperato and Medvedeff, Stewart has suffered from, and will continue to suffer from, humiliation, embarrassment, emotional distress, mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, as mother and next friend of Stewart, demands judgment against Howe, SRO Russell, Schneider, Imperato and Medvedeff for damages sustained, plus interest and costs, and such other relief as this Honorable Court may deem meet and just.

## COUNT XX
## INTERFERENCE WITH PARENT-CHILD RELATIONSHIP
### (Jane Doe, Individually and as mother and next friend of Stewart v. Defendants Town of Acton, ABRSD, Howe, SRO Russell, Schneider, Imperato and Medvedeff)

189.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 188 of the Complaint, as if expressly set forth herein.

190.     This Count is brought by Jane Doe, individually and as mother and next friend of Stewart, against Town of Acton, ABRSD, Howe, SRO Russell, Schneider, Imperato and Medvedeff, jointly and individually, for interference with the parent-child relationship.

191.     The Defendants failed, neglected or refused to return Stewart to Jane Doe after Stewart was in the care of the Defendants and after the school day had ended.

192.     Jane Doe was legally entitled to custody of Stewart at all relevant times.

193.     The Defendants had knowledge that Jane Doe did not consent or relinquish custody of Stewart to them.

194.     As a direct and proximate result of the conduct and/or omissions of both  Town of Acton, through its officers, agents, servants, or employees, including, without limitation,  SRO Russell and  ABRSD, through its officers, agents, servants, or employees, including, without limitation, Schneider, Imperato and Medvedeff, Stewart has suffered from, and will continue to suffer from, emotional distress, mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, individually and as mother and next friend of Stewart, demands judgment against Town of Acton, ABRSD, Howe, SRO Russell, Schneider, Imperato and Medvedeff for damages sustained, plus interest and costs, and such other relief as this Honorable Court may deem meet and just.

## COUNT XXI
### RACIAL DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS c. 93 §102
**(Jane Doe, Individually and as mother and next friend of Stewart v. Defendants Town of Acton, ABRSD, Howe, SRO Russell, Schneider, and, Imperato)**

195.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 194 of the Complaint, as if expressly set forth herein.

196.    This Count is brought by Jane Doe, individually and as mother and next friend of Stewart, against Town of Acton, ABRSD, Howe, SRO Russell, Schneider, and Imperato, jointly and individually, for racial discrimination in violation of Mass. Gen. Laws c. 93 §102.

197.    Through the actions described herein, the Town of Acton and ABRSD, through their respective officers, agents, servants or employees, including, without limitation, Howe, SRO Russell, Schneider, and Imperato, made a distinction, discrimination or restriction on account of the race, color, and national origin of Jane Doe and Stewart, relative to their admission to, or their treatment in Merriam, a place of public accommodation, and, further, failed to accord Jane Doe and Stewart the same rights enjoyed by White male citizens and deprived them of the full and equal benefit of all laws and proceedings for the security of persons and property.

198.    Through the actions described herein, Town of Acton and ABRSD, through their respective officers, agents, servants or employees, including, without limitation, Howe, SRO Russell, Schneider, and Imperato aided or incited such distinction, discrimination or restriction, and they deprived Jane Doe and Stewart of their right to the full and equal accommodations, advantages, facilities and privileges of the place of accommodation.

199.    As a direct and proximate result of the conduct and/or omissions of both Town of Acton, through its officers, agents, servants, or employees, including, without limitation, SRO Russell and Howe, and ABRSD, through its officers, agents, servants, or employees, including,

49

without limitation, Schneider and Imperato, Jane Doe and Stewart have suffered from, and will continue to suffer from, emotional distress, mental anguish and other damages.

**WHEREFORE**, Plaintiff Jane Doe, individually and as mother and next friend of Stewart, demands judgment against the Town of Acton, ABRSD, Howe, SRO Russell, Schneider, and Imperato for damages sustained, plus exemplary damages, interest, costs, attorneys' fees, and such other relief as this Honorable Court may deem meet and just.

## COUNT XXII
### NEGLIGENCE/GROSS NEGLIGENCE/FAILURE TO TRAIN/FAILURE TO SUPERVISE
### (Jane Doe, Individually and as mother and next friend of Stewart v. Defendants Town of Acton and ABRSD)

200.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 199 of the Complaint, as if expressly set forth herein.

201.    This Count is brought by Jane Doe, individually and as mother and next friend of Stewart, against Town of Acton and ABRSD for the actions of their respective officers, servants, agents or employees, including, without limitation, Howe, SRO Russell, Schneider, Imperato and Medvedeff, in violation of Mass. Gen. Laws c. 258 §2.

202.    At all times relevant, Town of Acton and ABRSD owed various duties to Stewart and to Jane Doe.

203.    Town of Acton and ABRSD, through their respective officers, servants, agents or employees, including, without limitation, Howe, SRO Russell, Schneider, Imperato and Medvedeff breached their duty to Jane Doe and Stewart by, among other things, negligently and/or grossly negligently with reckless indifference, and/or intentionally, (a) used unreasonably, unnecessary and excessive force upon Jane Doe and Stewart, (b) interfered with Jane Doe's parental rights and with Stewart's rights to be with his mother, (c) refused to permit Jane Doe to

50

be with, and to take with her, Stewart, and refused to permit Stewart to be with his mother, (d) unlawfully seized and restrained Jane Doe and Stewart, (e) unnecessarily and falsely arrested Jane Doe without probable cause, (f) caused Stewart to be hospitalized without cause, (g) exceeded the scope of the police officers' authority, (h) improperly delegated the roles and responsibilities of school personnel to the police including authority over the building, (i) conspired to remove Stewart from the Merriam, (j) failed to permit Stewart to leave Merriam with his mother when the school day was over, (k) disclosed confidential information about Stewart publicly and to medical personnel without permission or authority, (l) failed to contact Stewart's emergency contact person, (m) travelled with Stewart to the hospital without permission or authorization, (n) placed personal and private information about Jane Doe and Stewart on the Town of Acton website, including, without limitation, police reports involving a minor in which the police were wrongfully involved by ABRSD, (o) caused Jane Doe and Stewart to suffer humiliation and embarrassment, and (p) used an untrained SRO to perform a safety hold on a student.

204.   Additionally, Town of Acton and ABRSD negligently and/or grossly negligent failed to train its/their police officers and school personnel with regard to, among other things, (a) issues relating to harassment, racial and mental disability discrimination, and retaliation, (b) the proper way to handle a dysregulated child, (c) the role of an SRO, especially when dealing with a child who is too young to be charged with any crime, (d) the proper delineation of authority and control between school officials and police pursuant to common law and ABRSD's Memorandum of Understanding (MOU) with the Acton Police, (e) the proper way to contact an emergency contact on file for a student, (f) how to diffuse, and not to escalate, a situation involving a parent-child issue at the school, (g) issues relating to student privacy, (h) when

school officials should contact the police, (i) whether an SRO should participate in student holds, (j) whether an untrained SRO should participate in student holds,) when, and under what circumstances, a child may be seized and hospitalized after the school day had ended, and (k) when, and under what circumstances, private information about individuals may be posted on the internet.

205.    Additionally, Town of Acton negligently and/or grossly negligent failed to supervise its police officers with regard to, among other things, (a) failing to insure that SRO Russell did not exceed the scope of his authority as an SRO, (b) failing to insure that SRO Russell did not participate in a hold upon a child when SRO Russell's supervisor knew, or should have known, that SRO Russell was not trained in the hold (c) failing to ensure that SRO Russell did not seize Stewart in violation of Stewart's rights, (d) failing to ensure that Jane Doe's right to custody was not infringed upon, (e) failing to ensure that Jane Doe could leave Merriam with Stewart when the school day was over, (f) failing to prevent the use of excessive force upon, and the arrest of, Jane Doe, and (g) when, and under what circumstances, private information about individuals may be posted on the internet.

206.    ABRSD, through Schneider, negligently and/or grossly negligently failed to supervise its personnel, including, without limitation, Imperato, and Medvedeff, with regard to, among other things, (a) the circumstances under which school personnel could ask an SRO to interact with Stewart, (b) preventing the use of excessive force at the school, (c) preventing the taking of Stewart to the hospital involuntarily after Stewart was calm and not posing a safety risk to himself or others, (d) the ability of a parent to leave the school with the parent's child when the school day is over, (e) the improper delegation of power and authority over the school

designated to the Principal in the MOU to the police, and (f) when, and under what circumstances, private information about individuals may be posted on the internet

207.    The breaches of their respective duties by Town of Acton and ABRSD, through their respective officers, agents, servants and employees, including, without limitation, SRO Russell, Howe, Schneider, Imperato and Medvedeff, caused Jane Doe and Stewart to suffer harm, including, without limitation, emotional distress.

**WHEREFORE**, Plaintiff Jane Doe, individually and as mother and next friend of Stewart, demands judgment against Town of Acton and ABRSD for damages sustained, plus interest and costs, and such other relief as this Honorable Court may deem meet and just.

### COUNT XXIII
### VIOLATION OF CIVIL RIGHTS LAWS PURSUANT TO 42 U.S.C. §1983
### (Jane Doe, Individually and as mother and next friend of Stewart v. Defendant Town of Acton)

208.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 207 of the Complaint, as if expressly set forth herein.

209.    This Count is brought by Jane Doe, individually and as mother and next friend of Stewart, against Town of Acton for its above-described intentional, reckless, grossly negligent, callously indifferent and/or other wrongful conduct pursuant to 42 U.S.C. §1983. *See Monell v. City of New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

210.    At all times relevant hereto, SRO Russell and Howe, while agents, servants and/or employees of Town of Acton were acting under color of law and within the scope of their authority as police officers pursuant to established policies, rules, regulations, ordinances, customs and usages of Town of Acton.

211.    Town of Acton, acting individually and/or in concert with ABRSD, participated in a pattern of conduct, and has demonstrated a custom and policy of deliberate indifference to

the rights of citizens, consisting of, among other things, (a) tolerating, creating and/or maintaining a custom and policy where Black individuals are not afforded the same rights, privileges, immunities and courtesies as White individuals, (b) tolerating, creating and/or maintaining a custom and policy of repeatedly involving an SRO in non-criminal situations involving students, including, without limitation, Stewart, (c) tolerating, creating and/or maintaining a custom and policy of separating a parent from a child and a child from his/her parent, (d) tolerating, creating and/or maintaining a custom and policy of repeatedly involving an SRO in dealing with children (like Stewart) who are too young to be charged with any crime, (e) tolerating, creating and/or maintaining a custom and policy of permitting an untrained police officer to participate in a safety hold of a child, (f) tolerating, creating or maintaining a policy of posting on the internet a statement regarding the January 9, 2020 incident, redacted police reports regarding incidents involving Stewart on January 7 - 9, 2020, and a redacted investigative report regarding the January 9, 2020 incident, which report contains private information regarding Stewart, and (g) permitting an SRO to determine whether a child would be hospitalized pursuant to Mass. Gen. Laws c. 123 §12.

212.    Town of Acton, acting individually and/or in concert with ABRSD, failed to train its officers, agents, servants or employees suitably regarding, among other things: (a) issues relating to harassment and racial discrimination, (b) the handling of a dysregulated child, (c) issues relating to student and individual privacy, (d) the circumstances under which a police officer may participate in a safety hold of a student,  (e) the circumstances under which a police officer may make the determination as to whether to hospitalize a student at a school, (f) the circumstances under which a police officer may arrest a parent at a school, (g) the de-escalation

of situations, (h) issues relating to the ability of a parent to be with his/her child, and of a child to be with his/her parent, and (i) the circumstances under which Town of Acton, through its officers, agents, servants or employees, may post information, including, without limitation, statements, police reports and/or an investigative report containing private information about and concerning, among other things, a minor child and a Black family, on Town of Acton's website.

213.    Town of Acton (acting individually and/or in concert with ABRSD), through its officers, agents, servants or employees, including, without limitation, Howe, failed to supervise its officers, agents, servants, or employees, including, without limitation, SRO Russell, regarding, among other things: (a) the scope of the authority of an SRO, (b) the circumstances under which an officer may seize, and hospitalize, a student who was calm while at school after the school day had ended, and (c) the circumstances under which Town of Acton, through its officers, agents, servants or employees, may post on the internet statements, police reports and/or an investigative report concerning, among other things, a minor child and a Black family.

214.    These failures on the part of Town of Acton are signs of recklessness and gross negligence and exhibit a deliberate indifference by  Town of Acton which is a shock to the conscience of all people.

215.    As a direct and proximate result of the aforesaid acts of the Town of Acton, Plaintiffs have suffered from, and will continue to suffer from, mental anguish, embarrassment, degradation, pain, suffering, humiliation, and other damages.

**WHEREFORE**, Plaintiff Jane Doe, Individually and as Mother and Next Friend of Stewart, requests that this Court:

1.    Award Plaintiffs compensatory damages;

55

2.    Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;

3.    Enter a preliminary and/or permanent injunction enjoining the Town of Acton from continuing to maintain its post and/or post anew on the internet any information, including, without limitation, the January 30, 2020 statement, the redacted police reports and the investigative report relating to the January 9, 2020 incident;  and

4.    Award such further relief as this Court may deem necessary and appropriate.

## COUNT XXIV
### VIOLATION OF CIVIL RIGHTS LAWS PURSUANT TO 42 U.S.C. §1983
### (Jane Doe, Individually and as mother and next friend of Stewart v. Defendant ABRSD)

216.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 215 of the Complaint, as if expressly set forth herein.

217.    This Count is brought by Jane Doe, individually and as mother and next friend of Stewart, against ABRSD for its above-described intentional, reckless, grossly negligent, callously indifferent and/or other wrongful conduct pursuant to 42 U.S.C. §1983. *See Monell v. City of New York Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

218.    At all times relevant hereto, SRO Russell, Schneider, Imperato and Medvedeff, while agents, servants and/or employees of ABRSD, were acting under color of law and within the scope of their authority as officers, agents, servants or employees of ABRSD pursuant to established policies, rules, regulations, ordinances, customs and usages of the ABRSD.

219.    ABRSD, individually and/or in concert with Town of Acton, participated in a pattern of conduct, and has demonstrated a custom and policy of deliberate indifference to the rights of citizens, consisting of, among other things, (a) tolerating, creating and/or maintaining a custom and policy where Black individuals are not afforded the same rights and courtesies as White individuals, (b) tolerating, creating and/or maintaining a custom and policy of repeatedly involving an SRO in non-criminal situations involving students, including, without limitation,

Stewart, (c) tolerating, creating and/or maintaining a custom and policy of separating a parent from a child and a child from his/her parent, (d) tolerating, creating and/or maintaining a custom and policy of repeatedly involving an SRO in dealing with children (like Stewart) who are too young to be charged with any crime, and (e) tolerating, creating and/or maintaining a custom and policy of permitting an untrained police officer to participate in a safety hold of a child.

220.    ABRSD, individually and/or in concert with Town of Acton, failed to train its officers, agents, servants or employees suitably regarding, among other things: (a) issues relating to harassment and racial discrimination, (b) the handling of a dysregulated child, (c) issues relating to student and individual privacy, (d) the circumstances under which a police officer may participate in a safety hold of a student,  (e) the circumstances under which a police officer may make the determination as to whether to hospitalize a student at a school, (f) the circumstances under which a police officer may arrest a parent at a school, (g) the de-escalation of situations, and (h) issues relating to the ability of a parent to be with his/her child, and of a child to be with his/her parent.

221.    ABRSD (individually and/or in concert with Town of Acton), through its officers, agents, servants or employees, including, without limitation, Howe failed to supervise its officers, agents, servants, or employees, including, without limitation, SRO Russell, regarding, among other things: (a) the scope of the authority of an SRO, and (b) the circumstances under which an officer may seize, and hospitalize, a student who was calm while at school after the school day had ended.

222.   These failures on the part of ABRSD are signs of recklessness and gross negligence and exhibit a deliberate indifference by ABRSD which is a shock to the conscience of all people.

223.   As a direct and proximate result of the aforesaid acts of ABRSD, Plaintiffs have suffered from, and will continue to suffer from, mental anguish, embarrassment, degradation, pain, suffering, humiliation, and other damages.

**WHEREFORE**, Plaintiff Jane Doe, Individually and as Mother and Next Friend of Stewart, requests that this Court:

1.   Award Plaintiffs compensatory damages;
2.   Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
3.   Award such further relief as this Court may deem necessary and appropriate.

## COUNT XXV
### UNLAWFUL DISCRIMINATION PURSUANT TO
### 42 U.S.C. §2000d
**(Jane Doe, Individually and as Mother and Next Friend of Stewart v. Defendant ABRSD)**

224.   Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 223 of the Complaint as if expressly set forth herein.

225.   This Count is brought by Jane Doe, Individually and as mother and next friend of Stewart, against  ABRSD for conspiracy to violate civil rights pursuant to 42 U.S.C. §1985.

226.   As described above, Jane Doe and Steward were excluded from participation in, denied the benefits of, and/or were subjected to intentional discrimination on the basis of race and/or national origin by ABRSD, a school receiving federal financial assistance.

227.   As a direct and proximate result of the aforesaid acts of ABRSD, Plaintiffs have

suffered from, and will continue to suffer from, mental anguish, embarrassment, degradation,

pain, suffering, humiliation, and other damages.

**WHEREFORE**, Plaintiff Jane Doe, Individually and as Mother and Next Friend of

Stewart, requests that this Court:

1.   Award Plaintiffs compensatory damages;
2.   Award Plaintiffs costs, expenses, reasonable attorney's fees of this action, plus interest;  and
3.   Award such further relief as this Court may deem necessary and appropriate.

**COUNT XXVI**
**LOSS OF CONSORTIUM**
**(Jane Doe, Individually and as mother and next friend of Stewart v. all Defendants)**

228.   Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through

217 of the Complaint, as if expressly set forth herein.

229.   This Count is brought by Jane Doe, individually and as mother and next friend of

Stewart, against all Defendants for loss of consortium.

230.   As a direct and proximate result of each  Defendants' negligence and wrongful

conduct, for which each is  legally responsible and by which each caused Stewart's and Jane

Doe's injuries and/or emotional distress, Stewart has been deprived of the society, love,

affection, companionship, care and services of his mother, Jane Doe, and Jane Doe has been

deprived of the society, love, affection, companionship, care and services of her son, Stewart.

231.   Jane Doe seeks all damages available against each Defendant on account of her

loss of Stewart's consortium, and Stewart seeks all damages available against each Defendant on

account of his loss of Jane Doe's consortium.

**WHEREFORE**, Plaintiff Jane Doe, individually and as mother and next friend of Stewart, demands judgment against all Defendants for damages sustained, plus interest and costs, and such other relief as this Honorable Court may deem meet and just.

## COUNT XXVII
## APPEAL OF ERRONEOUS BSEA HEARING DECISION
### (Jane Doe, Individually and as mother and next friend of Stewart v. Bureau of Special Education Appeals of the Commonwealth of Massachusetts Division of Administrative Law Appeals and ABRSD

232.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 231 of the Complaint as if expressly set forth herein.

233.    This Count is brought by Jane Doe, as mother and next friend of Stewart, against the BSEA and ABRSD, to appeal the decision of the hearing officer at the BSEA for mistakes of fact and errors of law, failing to properly weigh the evidence submitted at the hearing in this matter and made related erroneous findings that were not supported by the preponderance of the evidence, were biased, arbitrary and capricious, unwarranted by the facts on the record, an abuse of discretion, and not in accordance with the law.

234.    The Hearing Officer erroneously denied Jane Doe the opportunity to cross examine certain adverse witnesses called by Stewart pursuant to M.G.L. c. 233 § 22.

235.    The Hearing Officer committed mistakes of fact and errors of law, failed to properly weigh the evidence submitted at the hearing and erroneously found that ABRSD had not discriminated against Stewart in violation of Section 504 through: changes in Stewart's IEP services by adding without parental consent a 1:1 aide at Conant between January and March 2020; involvement of the SRO in responding to Stewart's dysregulation in January 2020; and imposition of inappropriate consequences and punishment for manifestations of Stewart's disability, including unlawful, dangerous, and improper restraints, separation from his parent,

60

and a section 12 commitment on Stewart. The Hearing Officer's findings were not supported by the preponderance of the evidence, were biased, arbitrary and capricious, unwarranted by the facts on the record, an abuse of discretion, and not in accordance with the law.

236.   The Hearing Officer failed to properly weigh the evidence submitted at the hearing and erroneously found that ABRSD had not denied Stewart a free and appropriate public education (FAPE) in violation of the IDEA by failing to implement an accepted IEP through: use of the SRO in response to Stewart's dysregulation in January 2020; alteration of IEP services without the consent of his parent including the assignment of a 1:1 aide at Conant between January and March 2020; failure to use positive behavior interventions and instead imposing inappropriate consequences and punishments including improper and dangerous restraints, preventing access to his mother, and a section 12 commitment of Stewart between December 2019 and January 2020. The Hearing Officer's findings were not supported by the preponderance of the evidence, were biased, arbitrary and capricious, unwarranted by the facts on the record, an abuse of discretion, and not in accordance with the law.

237.   The Hearing Officer improperly failed to reach the issue of whether ABRSD's unilateral institution of a 1:1 aide for Stewart violated Stewart's right to a FAPE by depriving him of the least restrictive environment (LRE) where Jane Doe and her son raised the issue in her BSEA Hearing Request, erroneously finding that the individual hired by ABRSD was not a 1:1 and did not function in that capacity, and erroneously failing to reach the issue of whether such a change to Stewart's IEP and services would constitute a violation of Section 504 or a failure to implement his IEP. The Hearing Officer's findings were not supported by the preponderance of the evidence, were biased, arbitrary and capricious, unwarranted by the facts on the record, an abuse of discretion, and not in accordance with the law.

238.    Having not properly weighed the evidence and having made erroneous findings, the Hearing Officer thereafter erroneously found that Jane Doe and her son were not entitled to compensatory services and were not entitled to any relief. The Hearing Officer's findings were not supported by the preponderance of the evidence, were biased, arbitrary and capricious, and unwarranted by the facts on the record.

239.    This appeal and complaint for judicial review of the BSEA decision is brought seeking a reversal of the Hearing Officer's decision as well as an order, to vacate the decision and order , and to provide compensatory relief. As a direct and proximate result of the aforesaid acts of BSEA, Plaintiffs have suffered from, and will continue to suffer from discrimination, violations, retaliation, and other wrongful conduct in violation of Section 504, denied of a free and appropriate public education (FAPE) in violation of the IDEA by failing to implement an accepted IEP, excluded from participation in the least restrictive environment, denied privacy of his school information, denied the benefits of the School District's programming, and other substantial damages, including without limitation, emotional distress, mental anguish, physical injury, and a loss of his right to an education.

**WHEREFORE**, Plaintiff Jane Doe, Individually and as Mother and Next Friend of Stewart, requests that this Court:

1.    Reverse and vacate the Hearing Officer's decision and order;
2.    Declare that Jane Doe and her son Stewart have met their burden in showing ABRSD discriminated against Stewart in violation of Section 504 of the Rehabilitation Act of 1973 and denied Stewart a free and appropriate public education (FAPE) in violation of the Individuals with Disabilities Education Act by failing to implement an accepted IEP;
3.    Hear any additional evidence offered by Jane Doe, Individually and as Mother and Next Friend of Stewart Doe, pursuant to 20 U.S.C. §1415(i)(2)(C)(ii);
4.    Award compensatory relief and order ABRSD to provide compensatory services and proper training of staff on the issues raised herein;
5.    Award Plaintiffs costs, expenses, reasonable attorney's fees of this action,

plus interest; and

6. Award such further relief as this Court may deem necessary and appropriate.

**PLAINTIFFS**
**CLAIM A TRIAL BY JURY ON**
**ALL ISSUES SO TRIABLE**

The Plaintiffs
Jane Doe, Individually and as Mother and Next Friend of Stewart Doe
By Their Attorneys,


/s/ Paul J. Klehm
Paul J. Klehm  BBO #561605
pklehm@kkf-attorneys.com
James B. Krasnoo BBO #279300
jkrasnoo@kkf-attorneys.com
Krasnoo, Klehm & Falkner LLP
28 Andover Street, Suite 240
Andover, MA 01810
P:  (978) 475-9955
F:  (978) 474-9005


Dated:  November 15, 2021

63